UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GLENN ECKHOFF,

                            Plaintiff,

        - against -

WAL-MART ASSOCIATES, INC.,
WAL-MART ASSOCIATES EAST, INC.,
WAL-MART ASSOCIATES EAST, LP., and
WAL-MART STORES, INC.,

                            Defendants.
------------------------------------------------------------------------x

WAL-MART STORES EAST, LP,

                            Third-Party Plaintiff,

        -against-

NATIONAL FREIGHT, INC.,

                            Third-Party Defendant.

------------------------------------------------------------------------x

**OPINION AND ORDER**

No. 13-CV-2395 (CS)

Appearances:

Patricia A. O'Connor
Brody, O'Connor & O'Connor, Esqs.
Northport, New York
*Counsel for Defendant/Third-Party Plaintiff*

Glenn A. Jacobson
Abrams, Gorelick, Friedman & Jacobson, LLP
New York, New York
*Counsel for Third-Party Defendant*

Seibel, J.

        Before the Court is the Motion of Third-Party Defendant National Freight, Inc. ("NFI")

to Dismiss the Third-Party Complaint of Third-Party Plaintiff Wal-Mart Stores East, LP

("WMSE") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 14(a).  (Doc. 18.)  For the following reasons, Defendant's Motion is GRANTED.

## I.  Background

The factual allegations contained in the Third-Party Plaintiff's Complaint ("TPC") are accepted as true for the purposes of this Motion and are construed in the light most favorable to the Third-Party Plaintiff.

In the underlying case, Plaintiff Glenn Eckhoff, an NFI truck driver, filed a Complaint against WMSE and other related entities alleging that Plaintiff sustained personal injuries as a result of Wal-Mart employees' negligence.  (Compl. ¶¶ 54-56.)[1]  Specifically, Mr. Eckhoff alleges that while he was delivering merchandise to a store, Wal-Mart employees negligently unloaded the truck, causing Mr. Eckhoff to be injured when he was struck by the merchandise. (*Id.*)

WMSE alleges that prior to the incident alleged in the Complaint, NFI entered into a transportation agreement ("Transportation Agreement") pursuant to which it transported and delivered goods to Wal-Mart stores.[2]  (TPC ¶ 6.)  WMSE alleges that the Transportation Agreement provided among other things that:  (1) NFI shall carry commercial general liability insurance with contractual liability coverage, (*id.* ¶ 7); (2) WMSE shall be named as an additional insured on NFI's commercial general liability insurance policy, (*id.* ¶ 8); (3) NFI shall indemnify WMSE against and from any lawsuits arising from services provided under the

---

[1] "Compl." refers to Mr. Eckhoff's Complaint, which was submitted to this Court along with WMSE's Notice of Removal.  (Doc. 1.)  The paragraphs in the Complaint are incorrectly numbered after paragraph 55 (the Complaint repeats 54 and 55).  This citation refers to the correctly numbered paragraphs 54 and 55 as well as the following three paragraphs.

[2] The Transportation Agreement was submitted to the Court, (*see* Declaration of Glenn A. Jacobson ("Jacobson Decl."), (Doc. 21), Ex. C), and I may consider it in connection with this Motion because it is integral to the TPC, which refers to it repeatedly.  *See Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (When deciding a motion to dismiss, the Court is entitled to consider "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference.") (internal quotation marks omitted).

agreement, including claims for personal injury asserted against WMSE by NFI's agents or

employees, (*id.* ¶ 9); and (4) NFI shall indemnify WMSE for any claim by any NFI employee for

injuries sustained in the ordinary course of business, (*id.* ¶ 10).

WMSE now brings claims against NFI seeking indemnification pursuant to the

Transportation Agreement should Mr. Eckhoff obtain a judgment, as well as damages for breach

of the Transportation Agreement based on NFI's alleged failure to obtain the requisite insurance

naming WMSE as an additional insured.  (*See id.* ¶¶ 12-13, 15-18.)

## II.  Legal Standards

### A.  *Rule 12(b)(6)*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'"  *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

    *B.  Rule 14(a)*

       Federal Rule of Civil Procedure 14(a) provides in relevant part that "[a] defending party

may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be

liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  "The crucial

characteristic of a Rule 14 claim is that defendant is attempting to transfer to the third-party

defendant the liability asserted against him by the original plaintiff."  *Siemens Westinghouse*

*Power Corp. v. Dick Corp.*, 299 F. Supp. 2d 242, 248 (S.D.N.Y. 2004) (internal quotation marks

omitted).

       To properly implead a party, "the mere fact that the alleged third-party claim arises from

the same transaction or set of facts as the original claims is not enough."  *Nat'l Bank of Can. v.*

*Artex Indus., Inc.*, 627 F. Supp. 610, 613 (S.D.N.Y. 1985) (alteration and internal quotation

marks omitted).  Impleader is available only if the third party defendant is "liable *secondarily* to

the original defendant," or "*liable over* to the defendant for all or part of the plaintiff's recovery."

*Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 686 (E.D.N.Y. 1994) (emphasis in

original) (internal quotation marks omitted).  In other words, defendant's third-party claim must

derive from the main claim, and "the claim of liability to the defendant and third-party plaintiff

[must] accrue only upon a finding of defendant's liability to the plaintiff on the main claim."

*Index Fund, Inc. v. Hagopian*, 417 F. Supp. 738, 744 (S.D.N.Y. 1976). Finally, "the decision

whether to permit a defendant to implead a third-party defendant rests in the trial court's

discretion, and the Court must balance the benefits of settling related matters in one suit against

the possible prejudice to the plaintiff and the third-party defendant." *Int'l Paving Sys.*, 866 F.

Supp. at 687 (alteration and internal citation and quotation marks omitted).

## III.  Analysis

### A.  Indemnification

WMSE asserts that pursuant to the Transportation Agreement, NFI is required to

indemnify it for Mr. Eckhoff's claim. (WMSE Mem. 4-5.)[3] Although WMSE is not a signatory

to the Transportation Agreement, it contends that it is entitled to enforce the Transportation

Agreement's provisions. (*Id.* at 2-3.) In support of its argument, WMSE directs the Court to a

section entitled, "Shipper's Affiliates," which states that "[t]he provisions of this Agreement

shall inure to the benefit of Shipper, as well as its wholly owned subsidiary corporations,

divisions and its parent company, and its parent company's subsidiaries and divisions."

(Jacobson Decl. Ex. C, § 6(a)(ii).) "Shipper" is defined as Wal-Mart Transportation, LLC

("WMT"). (*Id.* at 1.)[4] WMSE argues that as WMT's parent company it is clearly included

within this language, (WMSE Mem. 3), and is therefore entitled to indemnification by NFI

pursuant to Section 10 of the Transportation Agreement, (*id.* at 4-5).[5]

---

[3] "WMSE Mem" refers to the Memorandum of Law in Opposition to Motion to Dismiss. (Doc. 24.)

[4] The Transportation Agreement defines "Carrier" as NFI. (Jacobson Decl. Ex. C., at 1.)

[5] Section 10(a) of the Transportation Agreement provides:

> (a) Carrier shall at all times indemnify, defend and hold harmless Shipper, its agents and employees against and from any and all lawsuits, claims, actions, damages including reasonable attorney's fees, obligations, liabilities, and liens arising from the services provided hereunder (including, without limitation, claims for personal injury, death and damage to property, clean-up

The quoted section, however, does not stand alone or appear as part of the recitals or in any of the introductory, concluding or general sections of the Transportation Agreement.  Rather, it appears as romanette (ii) under Subsection (a) of Section 6.  *See Karmely v. Wertheimer*, No. 12-CV-3781, 2013 WL 6403071, at \*11-12 (2d Cir. Dec. 9, 2013) (discussing romanettes in contract language).  Section 6 is entitled "Compensation and Payment."  Subsection (a) is entitled "Rates and Charges."  Romanette (i) is entitled "Applicable Rates."  Romanette (ii) is entitled "Shipper's Affiliates" and contains the language on which WMSE relies.

NFI argues that the language in Section 6(a)(ii) was not intended to apply to the Transportation Agreement as a whole, but only to Section 6, which governs the financial arrangements established for the transportation of goods.  (NFI Mem. 5-6.)[6]  NFI further contends that even if Section 6(a)(ii) applies to the entire Transportation Agreement, it does not follow that WMSE is entitled to the benefits of the indemnification provisions because such an intention was not expressed in "clear and unequivocal terms."  (*Id.* at 6.)  Finally, NFI asserts that in any event, WMSE is not entitled to indemnification because Section 10 of the Transportation Agreement does not require NFI to indemnify WMSE for WMSE's negligence.  (*Id.* at 9-10.)

I agree with NFI, based on the placement of Section 6(a)(ii), that that section was not meant to apply to the whole agreement, but rather just to extend to affiliates the shipping rates set forth in Section 6(a)(i).  Notwithstanding the use of the term "this Agreement" in Section

---

costs from commodity spills and damages to the environment) asserted against Shipper (i) by any agent or employee of Carrier or (ii) by any other person.  Carrier will also hold harmless and indemnify Shipper for any claim for insurance premium or any claim by any employee of the Carrier for injuries sustained in the ordinary course of business, including, but not limited to, drivers, lumpers, helpers, agents or sub-contractors of Carrier.

(Jacobson Decl. Ex. C, § 10(a).)

[6] "NFI Mem." refers to the Memorandum of Law of Third-Party Defendant National Freight, Inc. in Support of its Motion for an Order Pursuant to Rule 12(b)(6) and 14 to Dismiss the Third-Party Complaint.  (Doc. 22.)

6(a)(ii), it would be nonsensical to bury as a sub-sub-section of the payment part of the contract a provision that was intended to apply to the whole contract, especially where there are myriad more logical places for it.

Even if Section 6(a)(ii) applied to the whole contract, such that WMSE would be considered a shipper, it does not follow that NFI must indemnify. I agree with NFI that Section 10 of the Transportation Agreement does not require indemnification. Section 10(a) does indeed state that NFI will indemnify WMT for any lawsuits against WMT arising from the services provided under the contract. (Jacobson Decl. Ex. C, § 10(a).) Section 10(b), however, indicates that for claims arising from WMT's negligence, WMT will be required to indemnify NFI. (*Id.* § 10(b).) As Mr. Eckhoff's claim arises from the alleged negligence of Wal-Mart employees, even if WMSE were covered by the indemnification provision, it would be Section 10(b), not Section 10(a), which would be applicable here.

WMSE argues that Section 10(a) should govern because it is "more specific" than Section 10(b). (WMSE Mem. 5.) I do not concur in that characterization. Rather, Section 10(b) seems to limit the scope of Section 10(a)'s indemnification clause. Under New York law, "indemnity provisions will not be construed to indemnify a party against his own negligence unless such intention is expressed in unequivocal terms." *Margolin v. N.Y. Life Ins. Co.*, 32 N.Y.2d 149, 153 (1973); *see Williams v. J.P. Morgan & Co.*, 248 F. Supp. 2d 320, 325-26 (S.D.N.Y. 2003) (absent unmistakable and unequivocal language exonerating party from its own negligence, contract will not be read to indemnify party against it) (collecting cases). Section 10(a) does not contain unequivocal language to the effect that NFI will indemnify WMT for its own negligence. Moreover, Section 10(b) makes explicit that the parties did not intend to

7

exculpate WMT from the consequences of its own negligence – indeed, WMT must indemnify

NFI in that event – so it would make little sense to construe Section 10(a) to mean otherwise.

Even if Section 10(a) trumped Section 10(b), WMSE would not be entitled to

indemnification.  For contractual indemnification to be enforceable, the intent to indemnify must

be "clearly implied from the language and purposes of the entire agreement."  *Margolin*, 32

N.Y.2d at 153; *see George v. Marshalls of MA, Inc.*, 878 N.Y.S.2d 143 (App. Div. 2009) ("The

right to contractual indemnification depends upon the specific language of the contract.").  "A

contractual indemnification provision must be strictly construed to avoid imposing a duty which

the parties did not intend," *Baginski v. Queen Grand Realty, LLC*, 891 N.Y.S.2d 448, 450 (App.

Div. 2009), and thus a "promise [to indemnify] should not be found unless it can be clearly

implied from the language and purpose of the entire agreement and the surrounding facts and

circumstances," *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491-92 (1989).

Section 10(a) states only that NFI "shall at all times indemnify, defend and hold harmless

*Shipper, its agents and employees*."  (Jacobson Decl. Ex. C, § 10(a) (emphasis added).)  As

discussed above, this language would cover WMSE only if Section 6(a)(ii) so required.  I have

found that it does not so require, but at the very least, it is far from clear.  Thus, given the narrow

construction of indemnification provisions, I decline to extend Section 10(a) to include WMT's

"wholly owned subsidiary corporations, divisions and . . . parent company, and its parent

company's subsidiaries and divisions," especially when that section itself explicitly added a

reference to WMT's "agents and employees."

WMSE's claim for indemnification is accordingly dismissed.

### B. *Breach of Contract*

NFI contends that WMSE's breach of contract claim must be dismissed because, among other reasons, it is not derivative of WMSE's liability to Mr. Eckhoff as required by Rule 14(a). (NFI Mem. 11.)  In other words, NFI argues, because WMSE's potential liability to Mr. Eckhoff was not caused by NFI's alleged failure to procure insurance, impleader is improper.

WMSE responds that impleader is permitted even if the legal claims of the plaintiff and third party plaintiff are not identical where a single group or aggregate of operate facts was involved.  (WMSE Mem. 7.)  I disagree.  As stated above, it is well-settled that "the mere fact that the alleged third-party claim arises from the same transaction or set of facts as the original claims is not enough" to implead a third-party defendant.  *Nat'l Bank of Can.*, 627 F. Supp. at 613 (alteration and internal quotation marks omitted); *see Siemens*, 299 F. Supp. 2d at 248; *Int'l Paving Sys.*, 866 F. Supp. at 686.  Moreover, "[t]he liability of the third party defendant [may] not arise out of a separate and independent claim" even when the independent claim "arise[s] out of the same general set of facts as the main claim."  *Blais Const. Co. v. Hanover Square Assocs.-I*, 733 F. Supp. 149, 152 (N.D.N.Y. 1990) (internal quotation marks omitted).

WMSE's breach of contract claim fails to constitute a derivative cause of action.  The legal and factual issues presented by the third-party breach of contract claim are independent of those that would be involved in the resolution of Mr. Eckhoff's negligence claim.  NFI could have breached its contract with WMT even if Mr. Eckhoff's injuries were not caused by the negligence of WMSE employees; it is thus difficult to see how liability on the contract claim is "dependent upon the outcome of the main claim."  *Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29, 31 (2d Cir. 1984); *see Blais*, 733 F. Supp. at 157 (dismissing third-party plaintiffs' statutory and negligence claims where main action involved breach of contract).  Thus

while NFI could be liable to WMT for breach of contract, it would not be liable *over* to WMSE

for any negligence damages Mr. Eckhoff may recover.  In short, whether NFI breached an

obligation to name WMT (or WMSE) as an additional insured in no way turns on whether

WMSE was negligent with respect to Mr. Eckhoff.  *See Index Fund*, 417 F. Supp. at 744

(impleader proper where third-party claim accrues only upon finding of defendant's liability on

main claim).

Accordingly, WMSE's breach of contract claim is dismissed.

## IV.  Conclusion

For the foregoing reasons, NFI's Motion to Dismiss is GRANTED.  The Clerk of Court

is respectfully directed to terminate the pending Motion, (Doc. 18), and terminate National

Freight, Inc. as a Third-Party Defendant.

**SO ORDERED.**

Dated:  December 30, 2013
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.